UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WINNERS CIRCLE GROUP, LLC, </br>     *Plaintiff*, </br> </br>     *vs*. </br> </br> PDM RACING, INC., and </br> PAUL DIATLOVICH, </br>     *Defendants*. | 1:10-cv-334-JMS-WGH |

## ORDER

Presently before the Court is Plaintiff Winners Circle Group, LLC's ("WCG"), Motion for Partial Summary Judgment on the issue of the possession of certain disputed property. [Dkt. 40.]

### I.
#### SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would, as a matter of law, conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 323. The key inquiry is the existence of evidence to support a plaintiff's claims or affirmative defenses, not the weight or

credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

## II.
### BACKGROUND

This case involves ownership and possession of Indy Pro Series racecar chassis No. IP-2015 (the "Racecar"), related equipment (the "Equipment"),[1] and a carbon fiber camera stand (the "Stand") (collectively, the "Property"). Pursuant to a preliminary injunction previously entered by this Court, the Property is currently in the possession of Defendant PDM Racing, Inc., which is owned by Defendant Paul Diatlovich (collectively, "PDM"). [Dkt. 29.]

On March 10, 2009, PDM filed a "Verified Notice of Intention to Hold Common Law Lien" over the Racecar for work PDM performed for the Racecar's alleged owner. [Dkt. 9-1 at 5.] The same day, PDM filed a Complaint in Marion County Superior Court to foreclose on the lien. [*Id.* at 8.] The filing documents listed the owner of the Racecar as "American Spirit Capital d/b/a ASR/Nelan Motorsports, LLC" ("AS Capital"). [*Id.* at 5.]

On March 20, 2009, WCG entered into a settlement agreement with AS Capital to purchase the Racecar and the Equipment as part of the termination of a prior contract. [Dkt. 41-3 at 3.] The purchase agreement and accompanying bill of sale transferred ownership of the Racecar and the Equipment from American Spirit Holdings, LLC ("AS Holdings") to WCG. [*Id.*] AS Holdings is a related company to AS Capital. [*Id.*] At the time WCG purchased the Racecar and the Equipment, the Property was located at PDM's facility. [*Id.*]

---

[1] Items included in the Equipment are enumerated in this Court's June 24, 2010 Preliminary Injunction Order. [*See* dkt. 29 at 2.]

Following the sale of the Racecar and the Equipment to WCG, WCG member Junior Strous participated in a number of races[2] in the 2009 Firestone Indy Lights racing series using the Property. [*Id.*; Dkt. 9-1 ¶ 10.] The parties disagree whether Mr. Strous participated in the races as a joint representative of WCG and PDM or solely on WCG's behalf. In addition to WCG's use of the Property, PDM tested and ran the Racecar with a non-WCG driver in early 2010. [Dkt. 21 ¶ 32.]

The parties do not dispute that WCG legally owned the Racecar and the Equipment at all times following the transfer from AS Holdings. [Dkt. 41-3.] WCG also owned the Stand, which was stored at PDM's facility. [*Id.* at 2.] WCG made multiple requests for PDM to hand over the Property, all of which were refused. [*Id.*] On June 24, 2010, this Court entered a preliminary injunction order enjoining PDM from "moving, transporting, selling, using, testing, racing, repairing, modifying or otherwise altering" the Property beyond actions necessary to properly and safely store the Property. [Dkt. 29.] In its request for partial summary judgment, WCG asks the Court to declare which party is entitled to possession of the Property. [Dkt. 40.]

The Court adds additional facts below as needed.

### III.
#### DISCUSSION

**A. Possession of the Equipment and Stand**

WCG asserts that it is entitled to possession of the Equipment and the Stand because PDM's lien does not cover them and, therefore, PDM has no valid claim of possession over them. [Dkt. 41 at 7–8.] In PDM's lien documents, the property subject to the lien is described as "Indy Pro Series racecar chassis No. IP-2015." [Dkt. 47-1 at 6.] The Equipment and the Stand

---

[2] Mr. Strous participated in races on April 4, April 5, April 19, April 26, and May 22, 2009. [Dkt. 41-3 ¶¶ 6–7.]

are not listed as personal property subject to PDM's lien anywhere in the lien documents. [*Id.*] WCG has introduced evidence that it owns both the Equipment and the Stand. [Dkt. 41-3 at 2 ¶ 9, 6-7.] PDM has not introduced evidence contesting WCG's ownership of the Equipment and the Stand or asserting that PDM has a possessory interest in either. Absent a claim with superior priority, the owner of property is entitled to possession of it. *See Murphy v. State*, 453 N.E.2d 219, 221 (Ind. 1983) (owner of property has right to possess it). Because the evidence unquestionably shows WCG to be the owner of the Equipment and the Stand, the Court concludes that there is no genuine issue of material fact as to which party is entitled to possession of those items. WCG is entitled to possession of the Equipment and the Stand.

### B. Possession of the Racecar

WCG's ownership of the Racecar is uncontested, as is the fact that WCG purchased the Racecar after PDM's lien was filed. [Dkt. 41-3 at 1, 6.] Indiana law permits the acquisition of property subject to possessory lien. *See State v. Mileff*, 520 N.E.2d 123, 128 (Ind. Ct. App. 1988) (valid lien on personal property may be enforced against subsequent purchaser with notice of the lien). Therefore, the Court must determine whether PDM's lien on the Racecar is valid such that WCG's purchase of the Racecar is subject to it. In addition, the parties dispute whether PDM's post-filing conduct waived any lien it may have had.

#### 1. Validity of PDM's Lien

WCG first contends that PDM's lien on the Racecar is invalid as a matter of law because PDM failed to name the correct owner in its filing documents. [Dkt. 41 at 9-10.] In its initial filings in Marion Superior Court, PDM claimed a common law possessory lien on the Racecar. [Dkt. 9-1 at 5.] To assert an enforceable common law possessory lien, the lien filer must file a "statement of intention to hold a common law lien" in compliance with Indiana Code Section 32-

28-13-5.³ This statement must include "the name of the property owner." Ind. Code § 32-28-13-5(b)(3)(C) (2010).

In this case, PDM's filing named the owner of the Racecar as AS Capital. [Dkt. 47-1 at 6.] However, the parties now agree that AS Holdings, rather than AS Capital, was the owner of the Racecar at the time PDM filed its lien. [Dkts. 41 at 9-10.] Although AS Holdings is a related company to AS Capital with the same managers and owners, [*see* dkt. 41-3 at 3-5], WCG contends that filing against AS Capital rather than AS Holdings renders PDM's initial filing invalid as a matter of law.

The issue of precision of names for filing common law liens in Indiana appears to be a question of first impression. Neither party has directed the Court to case law interpreting the filing requirements for common law liens, and the Court has not found any cases addressing the issue. Therefore, the Court must turn to the codified filing requirements for common law liens to determine whether PDM's filing is in compliance with those requirements. Apart from requiring the statement of intention to hold a common law lien to include "the name of the property owner," the statute provides little guidance as to how precise the name requirement is. *See* Ind. Code § 32-28-13-5 (2010).

Examining the filing requirements for other types of liens provides some guidance, as "[s]tatutory provisions must not be construed standing alone, but must be considered with reference to other sections." *Selmeyer v. Se. Ind. Vocational Sch.*, 509 N.E.2d 1150, 1152 (Ind. Ct. App. 1987). The statutory mechanics lien has the closest filing requirements to those for a com-

---

³ Indiana Code Section 32-28-13-5 provides the filing requirements for common law possessory liens but does not provide an independent legal basis for asserting a common law possessory lien. *See* Ind. Code § 32-28-13-4(b) (2010) ("This chapter does not create a common law lien . . . . A person asserting a common law lien must prove the existence of the lien as prescribed by the common law of Indiana.").

mon law lien. *See* Ind. Code § 32-28-3-3 (2010). However, despite the largely parallel language, the mechanics lien statute specifically provides that "[t]he name of the owner . . . will be sufficient if [it is] substantially as set forth" in the applicable property records. Ind. Code § 32-28-3-3(c) (2010). This substantial compliance safe harbor is not found in the filing requirements for common law liens. *See* Ind. Code § 32-28-13-5 (2010). It is clear that the General Assembly knows how to include a substantial compliance limitation when it wishes to do so. *Cf. U.S. Gypsum, Inc. v. Ind. Gas Co., Inc.*, 735 N.E.2d 790, 797 (Ind. 2000). When language is present in one section of a statute and absent from another, courts presume that the omission was intentional and purposeful. *See Krause v. Ind. Univ.-Purdue Univ. at Indianapolis*, 866 N.E.2d 846, 853 (Ind. Ct. App. 2007). Therefore, the Court concludes that, by failing to include a substantial compliance limitation in the filing requirements for common law liens, the General Assembly meant to preclude reliance on substantial compliance[4] for property owner names and, instead, require strict compliance. Because AS Holdings is not the same as AS Capital, the Court is forced to conclude that PDM's lien is invalid as a matter of law because it lists the wrong owner's name.

PDM asserts that even if the lien is invalid, estoppel should preclude WCG from taking advantage of the invalidity. [Dkt. 46 at 1-2.] First, PDM argues that WCG affirmatively acknowledged the existence and validity of PDM's lien in the purchase documents for the Racecar. [*Id.* at 2.] Second, PDM contends that its reliance on AS Capital's representation as to the owner

---

[4] Indeed, even under the substantial compliance standard, PDM's filing likely fails because a third party searching for liens against AS Holdings would be unlikely to find PDM's lien by searching the applicable records. *See Logansport Equip. Rental, Inc. v. Transco, Inc.*, 755 N.E.2d 1135, 1137-38 (Ind. Ct. App. 2001) (listing property owner as "Transco, Inc." rather than "Transco Railcar" failed to provide adequate notice to third parties under the substantial compliance test).

of the Racecar, combined with WCG's notice of the lien's existence, should estop WCG from arguing for the lien's invalidity. The Court addresses these arguments in turn.

Considering the purchase documents, the Court concludes that, while these documents acknowledge that PDM has claimed a lien against the Racecar, they do not affirmatively acknowledge the lien's validity. The Settlement Agreement states that "PDM has asserted the existence of a common law lien . . . against the Racecar." [Dkt. 41-3 at 3.] It also states that "the conveyance of the Racecar to WCG shall be expressly subject to the PDM Lien against the Racecar." [*Id.* at 4.] The Bill of Sale does not mention PDM's lien in any form. [*See id.* at 6-7.] Agreeing to accept the risk of a potentially valid lien, however, is not the same as acknowledging a lien's validity. Therefore, the Court concludes that WCG acknowledged the existence of the lien claim in the purchase documents but did not acknowledge the lien's validity. Accordingly, the purchase documents do not estop WCG from claiming that PDM's lien is invalid.

PDM also contends that, because WCG had notice of the lien when it purchased the Racecar, WCG should be estopped from challenging the lien's validity because the mistaken name was based on a representation from AS Capital. [Dkt. 46 at 2]. However, this contention both misconstrues the obligations undertaken by WCG when it purchased the Racecar and fails to account for one of the key purposes of the filing requirements. When WCG purchased the Racecar and acknowledged the existence of PDM's lien claim, it effectively assumed the position of AS Holdings—the Racecar's previous owner. [*See* Dkt. 41-3 at 4.] Had AS Holdings continued to own the Racecar, it would have been permitted to challenge the validity of PDM's lien for failure to adhere to the filing requirements. *Cf. Stanray Corp. v. Horizon Const., Inc.*, 342 N.E.2d 645, 649 (Ind. Ct. App. 1976) ("lien is . . . valid as against any party contesting its legal existence" only when properly filed). Upon purchase of the Racecar, WCG gained all the rights AS Hold-

ings had in the Racecar, including the right to challenge the validity of the lien.  In addition, PDM's argument fails to account for a key purpose of the filing requirements: providing notice of the lien to third parties.  *See Suburban Elec. Co. v. Lake Cnty. Trust Co.*, 412 N.E.2d 295, 297 (Ind. Ct. App. 1980).  Third parties searching for liens against the actual property owner, AS Holdings, would be unlikely to find PDM's lien against AS Capital.  Although filings are required to be sufficient to provide notice to the property owner, notice to the property owner alone is insufficient if the filing fails to provide adequate notice to third parties, such as future purchasers and lenders.  *Cf. id.*  In this case, PDM's lien failed to provide adequate notice to third parties, and WCG's notice of the lien does not remedy that inadequacy, particularly given the fact that WCG made no representations to PDM as to the proper owner of the Racecar.

**2. Waiver of PDM's Lien**

As an alternative ground for summary judgment, WCG contends that by allowing Mr. Strous and a third party to drive the Racecar after asserting its lien claim, PDM waived its lien. [Dkt. 41 at 12.]  PDM counters that, due to the specialized equipment needed to operate or transport the Racecar, none of the drivers of the Racecar were in a position to exclude PDM from control over it. [Dkt. 45 at 6.]  A common law lien is "the right to retain property for the security of a debt."  *Glascock v. Lemp*, 59 N.E. 342, 343 (Ind. Ct. App. 1901).  Under Indiana law, existence of a common law lien requires two elements: debt and possession.  *Lee Tool & Mould, Inc. v. Fort Wayne Pools, Inc.*, 791 F.2d 605, 610 n.8 (7th Cir. 1986) (quoting *Terpstra v. Farmers & Merchs. Bank*, 483 N.E.2d 749, 755 (Ind. Ct. App. 1985)).  The parties do not contest the debt element, but they disagree as to whether PDM's possession of the Racecar was sufficient to preclude waiving the lien.

"In cases of common-law liens . . . it is absolutely essential that the person claiming the lien should retain and hold an independent and exclusive possession of the particular chattel." *Vaught v. Knue*, 115 N.E. 108, 109 (Ind. Ct. App. 1917). In order to be in possession of a chattel, the person must have "physical contact with the intent to exercise such control on his own behalf . . . plus an intent to exclude others from [] control." *Williams v. State*, 253 N.E.2d 242, 245 (Ind. 1969). "Whenever [the lienholder] voluntarily surrenders [] possession his lien is lost, and he then has only the right of action against the person contracting for the work and supplies for the value of the same." *Vaught*, 115 N.E. at 109. Numerous Indiana cases conclude that voluntary surrender of an automobile by the lienholder waives a right to a common law possessory lien. *See, e.g.*, *Hendrickson & Sons Motor Co. v. Osha*, 331 N.E.2d 743, 757 (Ind. Ct. App. 1975); *Vaught*, 115 N.E. at 109. PDM contends that this case is distinguishable because the Racecar cannot "be easily driven off or removed by the debtor." [Dkt. 45 at 6.] Therefore, PDM contends, any surrendering of possession was not "absolute" and should not destroy the lien. [*Id.* (citing *Glascock*, 59 N.E. at 343).]

The Court agrees with WCG that PDM's conduct is inconsistent with the possession necessary to maintain a common law lien. Actions likely to destroy a chattel are inconsistent with the intent to use the chattel to secure a debt. *Accord.* Ind. Code § 26-1-9.1-207 (2010) (allowing use of collateral in the possession of a secured party "for the purpose of preserving the collateral or its value"); *see also Glascock*, 59 N.E. at 343 (characterizing lien as security for debt). PDM placed the Racecar in WCG's agent's possession on numerous occasions. [Dkt. 41-3 at 2 ¶¶ 6–7.] The Racecar was uninsured during each race in which Mr. Strous drove it. [*Id.* at 2 ¶ 8.] In addition to allowing Mr. Strous to drive the Racecar, PDM allowed a third party to drive it. [Dkt. 21 at 3 ¶ 32.] PDM also signed a contract to provide the Racecar to a third-party driver for

- 9 -

the 2010 racing season. [Dkt. 9-1 at 3 ¶ 12.] Given the nature of auto racing, these actions risked significant damage or total destruction of the Racecar and its value as security. In addition, these actions broke PDM's continuous possession of the Racecar. *Cf. Hendrickson & Sons*, 331 N.E.2d at 754 (statutory liens without continuous possession requirements are a "significant departure from the common law"). The Court concludes that PDM surrendered possession of the Racecar so as to waive any entitlement to its common law lien.

## IV.
### CONCLUSION

For the reasons provided herein, WCG's motion for partial summary judgment, [dkt. 40], is **GRANTED**.

12/10/2010

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


**Distribution via ECF only:**

Ryan Bruce Bowers
KROGER GARDIS & REGAS LLP
rbb@kgrlaw.com

Nathan D. Foushee
INDY LAW GROUP/FOUSHEE LAW GROUP, LLP
Nate@IndyLawGroup.com

James A. Knauer
KROGER GARDIS & REGAS, LLP
jak@kgrlaw.com